David M. Kohane – 03287-1989
Nicole G. McDonough – 02576-2008
**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey  07602-0800
201-489-3000
201-489-1536  Facsimile
Attorneys for Defendant LNT Acquisition, LLC d/b/a
Linens 'n Things

| | |
|---|---|
| Dawn Wolf and Jacob J. Hutman, Individually and On Behalf of All Others Similarly Situated,<br><br>                  Plaintiffs,<br><br>       v.<br><br>LNT Acquisition, LLC d/b/a Linens 'n Things,<br><br>                  Defendant. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CIVIL ACTION NO. 2:14-cv-00407 (FSH)(JBC)<br><br>                  Civil Action<br><br><br>**ORAL ARGUMENT REQUESTED** |

_____

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION OR,**
**IN THE ALTERNATIVE, TO DISMISS THE NEW JERSEY CONSUMER FRAUD ACT**
**CLAIM AND TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA**
_____

Of counsel and on the brief:
    David M. Kohane

On the brief:
    Nicole G. McDonough

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

LEGAL ARGUMENT ......................................................................................................... 6

I.   THIS COURT SHOULD DISMISS THE CLASS ACTION COMPLAINT BECAUSE IT LACKS SUBJECT MATTER JURISDICTION. ............................................................. 6

II.  IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE FIRST COUNT OF THE CLASS ACTION COMPLAINT AND TRANSFER THE REMAINDER OF THIS ACTION TO THE SOUTHERN DISTRICT OF CALIFORNIA. ..................................... 8

  A.  This Court Should Dismiss The New Jersey Consumer Fraud Act Count Of The Complaint Because New Jersey Law Does Not Apply To This Dispute. .............. 9

  B.  This Court Should Transfer This Action To The Southern District Of California Because Plaintiffs Agreed To A California Forum When They Purchased The Products ................................................................................................................. 10

CONCLUSION .................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 134 S.Ct. 568 (2013) ................................................................................................................10, 11

Carnival Cruise Lines, Inc. v. Shute, 299 U.S. 585 (1991) ......................................................10, 11

Christy v. We The People Forms and Service Centers, USA, Inc., 213 F.R.D. 235 (D.N.J. 2003) ........................................................................................................................................8

Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207 (3d Cir. 1991) ........................................10, 12

Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007).............................................................5, 6

Heleine v. Saxon Mortgage Servs., Inc., 2013 WL 1352257 (D.N.J. Apr. 2, 2013) ...................5, 6

Lorraine v. Markel American Ins. Co., 241 F.R.D. 534 (D.Md. 2007) ..........................................4

Maniscalco v. Brother Intern. (USA) Corp., 709 F.3d 202 (3d Cir. 2013).....................................8

Mark IV Transp. & Logistics, Inc. v. Nat'l Independent Contractor Ass'n, Inc., 2014 WL 69890 (D.N.J. Jan. 9, 2014) ..............................................................................................10, 12

McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178 (1936) .................................5

Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884 (3d Cir. 1977).............................5

Newcomb v. Daniels, Salts, Mongeluzzi & Barrett, Ltd., 847 F.Supp. 1244 (D.N.J. 1994)...........8

In re Rite Aid Corp. Securities Litigation, 396 F.3d 294 (3d Cir. 2005).........................................6

Telewizja Polska USA, Inc. v. Echostar Satellite Corp., 2004 WL 2367740 (N.D.Ill. Oct. 15, 2004) .....................................................................................................................................4

The Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1907) ............................................................10

**STATUTES**

28 U.S.C. § 1332(d) .............................................................................................................3, 5, 6, 7

28 U.S.C. § 1404(a) ..................................................................................................................9, 10

N.J.S.A. 56:8-1, et seq. ..............................................................................................................7, 9

N.J.S.A. 56:8-19...............................................................................................................................7

52801/0001-10572501v3

**RULES**

Fed. R. Civ. P. 12(b)(1)..................................................................................................................5

Fed. R. Evid. 803(6).......................................................................................................................3

Fed. R. Evid. 1006 .........................................................................................................................3

## PRELIMINARY STATEMENT

In their Class Action Complaint, Plaintiffs allege that defendant LNT Acquisition, LLC ("LNT" or "Defendant") misrepresented that certain bedding, towels, and sheets sold on LNT's website contained bamboo (the "Products"). They assert state law claims for violation of the New Jersey Consumer Fraud Act, breach of express warranty, and unjust enrichment, and they invoke this Court's jurisdiction based on diversity of citizenship. Plaintiffs allege, on information and belief, that the proposed class satisfies the minimum $5,000,000 amount in controversy required to maintain this case in federal court.

Plaintiffs are mistaken. As demonstrated below, the total sales of Products during the proposed class period is $177,559.80. As explained in detail below, the maximum amount in controversy is no more than $206,182.94, which includes the potential recovery of treble damages and estimated attorneys' fees for the proposed New Jersey sub-class under the New Jersey Consumer Fraud Act. Due to this deficiency, Plaintiffs' Class Action Complaint should be dismissed.

Furthermore, the contract governing Plaintiffs' purchases provides that California law governs and requires that any dispute be brought in California. The contractual provisions are enforceable under New Jersey and federal law. Thus, in the alternative, Plaintiffs' New Jersey Consumer Fraud Act claim should be dismissed, and the Court should transfer the remainder of this action to the Southern District of California.

## STATEMENT OF FACTS

### Plaintiffs' Allegations and Proposed Class

Plaintiffs Dawn Wolf and Jacob J. Hutman ("Plaintiffs") alleged they bought bedding, towels, and/or sheets through LNT's website at www.lnt.com (the "Website"). (Class Action Complaint ("Compl.") ¶¶ 2, 13, 25, 27; a true copy of the Class Action Complaint is attached to the Certification of Nicole G. McDonough, Esq. ("McDonough Cert.") as Exhibit A.) Plaintiffs allege that LNT misrepresented the nature of the Products on the Website by stating that they are "made of Bamboo." (Compl. ¶¶ 2, 14.) Plaintiffs Wolf and Hutman allegedly purchased the Products from LNT through the Website on October 14, 2013 and October 9, 2013, respectively. (Compl. ¶¶ 54-55.)

Plaintiffs' proposed Class is defined as follows:

Nationwide Class:

> All persons who, in the United States, within four years of the filing of this Complaint, purchased online from Defendant's website at www.LNT.com [*i.e.*, on or after January 19, 2010] any Bamboo Derivative textile product advertised on the website as "Bamboo" and not simultaneously (*i.e.* without the need to access additional information by means of another link or otherwise) described with a proper generic name for the fiber – such as rayon or viscose ("Class").

New Jersey § 56:8 Sub-Class:

> All persons who, in the State of New Jersey, on or after September 1, 2009, purchased online from Defendant's website at www.LNT.com any Bamboo Derivative textile product advertised on the website as "Bamboo" and not simultaneously (*i.e.* without the need to access additional information by means of another link or otherwise) described with a proper generic name for the fiber – such as rayon or viscose ("New Jersey Sub-Class").

[Compl. ¶ 62 (the Class and New Jersey Sub-Class are referred to as the "Classes").]

2

Shortly after filing their Class Action Complaint and at the Court's request, Plaintiffs filed a statement with the Court regarding jurisdiction. (A copy of Plaintiffs' Response to March 3, 2014 Order Regarding Jurisdiction ("Jurisdiction Statement") is attached to the McDonough Cert. as Exhibit B.) In the Class Action Complaint and Jurisdiction Statement, Plaintiffs allege that this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) "because the matter in controversy, **upon information and belief**, exceeds $5,000,000, exclusive of interest and costs…." (Compl. ¶ 22; Jurisdiction Statement ¶ 1 (emphasis added).)

**Only $177,559.80 Of Products Were Sold During the Proposed Class Period**

The Products are textiles such as bed sheets, duvet covers, pillowcases, and towels. (Certification of Gavin Mandelbaum ("Mandelbaum Cert.") ¶ 4.) From September 1, 2009 through the present (the "Proposed Class Period")[1], the total sales of Products during the Proposed Class Period was $177,559.80.[2] (Mandelbaum Cert. ¶ 11.) Of these, $5,504.45 of Products were sold to purchasers in New Jersey and $172,055.35 of Products to purchasers outside New Jersey.[3] (Mandelbaum Cert. ¶ 12.)

**The Website**

---

[1] The proposed Class includes people who purchased the Products beginning four years before the complaint was filed, *i.e.*, starting January 19, 2010. The proposed New Jersey subclass, however, begins September 1, 2009. (Compl. ¶ 62.) Thus, there is an inconsistency in the relevant time period for the Class and New Jersey Sub-Class. LNT will use the broader period, from September 1, 2009, for purposes of this motion.

[2] As explained in the Mandelbaum Cert., the Products were removed from the Website on March 27, 2014 after TCI received notice of the Class Action Complaint. As a result, there were no further sales of the Products after March 27, 2014. (Mandelbaum Cert. ¶ 9.)

[3] Pursuant to Fed. R. Evid. 1006 and 803(6), the Court may consider the summary of voluminous invoices (the "Invoices") attached to the Mandelbaum Cert. as Exhibits C and D. The invoices will be produced if requested by the Court or Plaintiffs. (See Mandelbaum Cert. ¶ 13.)

3

Torrey Commerce, Inc. ("TCI") runs LNT's online business, including the Website, pursuant to an "ECommerce Management Agreement" between LNT and TCI dated February 10, 2009 (the "Management Agreement").  (A true copy of the Management Agreement is attached to the Mandelbaum Cert. as Exhibit A.)  TCI is a California company with its principal place of business in San Diego, California.  (Mandelbaum Cert. ¶ 1.)

The Website sets forth the Terms that governed the use of the Website during the Proposed Class Period by purchasers (like Plaintiffs).  (Mandelbaum Cert. ¶¶ 5-6.)  The Terms govern purchases made through the Website, including those purchases made by the Plaintiffs:

> 1. General
>
> These General Terms and Conditions of Use ("Terms") are entered into by and between you and lnt.com ('LINENS 'N THINGS').  In consideration of your use of and access to this Internet site and the promises and obligations herein, and intending to be legally bound, you and LINENS 'N THINGS hereby agree as follows: Your access to and use of the LINENS 'N THINGS site is subject to these Terms, as well as any modifications issued by LINENS 'N THINGS to these Terms, and all applicable laws and regulations. BY USING THIS SITE, YOU AGREE TO AND WILL BE DEEMED TO BE BOUND BY THESE TERMS.  If you do not want to be bound by these Terms, do not use the LINENS 'N THINGS site.
>
> * * * *
>
> 11. Law and Forum
>
> These Terms **are governed by the laws of the State of California** except for its choice of law provisions.  User acknowledges that **any dispute arising out of these Terms shall be brought in the federal or state courts of California**.

[Terms on August 20, 2013 and October 20, 2013 at www.lnt.com, accessed through www.archive.org, Mandelbaum Cert. Exhibit B (emphasis added).][4]

---

[4] LNT may rely on screenshots of the Website retrieved from the Internet Archive Company on its archival website, www.archive.org, in order to represent the content of the Website on the dates in question. See Lorraine v. Markel American Ins. Co., 241 F.R.D. 534, 553 (D.Md. 2007); Telewizja Polska USA, Inc. v. Echostar Satellite Corp., 2004 WL 2367740 at *16 (N.D.Ill. Oct. 15, 2004) (accepting past screenshots of an adversary's website obtained through the Internet Archive Company, which represented the website's appearance at relevant dates). Furthermore, TCI confirms that, on the dates of Plaintiffs' purchases, the Terms appeared on the Website. (Mandelbaum Cert. ¶ 7.)

5

52801/0001-10572501v3

## LEGAL ARGUMENT

### I. THIS COURT SHOULD DISMISS THE CLASS ACTION COMPLAINT BECAUSE IT LACKS SUBJECT MATTER JURISDICTION.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss when the court lacks subject matter jurisdiction over the dispute. With respect to class actions based on diversity of citizenship, the matter in controversy must exceed $5,000,000, exclusive of interest and costs, for a court to have subject matter jurisdiction. 28 U.S.C. § 1332(d)(2).

If a defendant challenges the existence of jurisdiction by moving to dismiss pursuant to Rule 12(b)(1), the "plaintiff [has] the burden of proof that jurisdiction does in fact exist" and must demonstrate that the jurisdictional prerequisites are met "by a preponderance of the evidence." Frederico v. Home Depot, 507 F.3d 188, 198 (3d Cir. 2007) (citing McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936)); Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a 12(b)(1) motion to dismiss, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891. The court considers evidence outside the pleadings to determine whether jurisdiction exists. Heleine v. Saxon Mortgage Servs., Inc., 2013 WL 1352257, *2-3 (D.N.J. Apr. 2, 2013) (citing Mortensen, 549 F.2d at 891).

In Heleine, this Court considered a motion to dismiss a class action pursuant to Rule 12(b)(1) in which defendant challenged the amount in controversy alleged by plaintiff in its complaint. 2013 WL 1352257. The Court held, "[P]laintiff must show, based on the allegations in the [Complaint], that it is more likely than not that the aggregate of their proposed claims will meet or exceed $5,000,000." Id. at *4 (citing McNutt, 298 U.S. at 189-90). The Court held that it was insufficient for plaintiffs to "fall back on their conclusory assertion in the [Complaint] that

6

they 'believe' the amount in controversy exceeds $5,000,000 in light of Defendant's challenge to that amount." Id. at *5. Because plaintiffs failed to submit any evidence to support jurisdiction, the Court held that they did not satisfy their jurisdictional requirement and dismissed the Complaint. Id.

Here, Plaintiffs allege that this Court has subject matter jurisdiction solely on the basis of diversity under 28 U.S.C. § 1332(d), and allege "upon information and belief" that the amount in controversy is met. (Compl. ¶ 22; Jurisdiction Statement.) However, the business records of Products sales kept by TCI conclusively demonstrate that only $177,559.80 of Products were sold during the Proposed Class Period. (Mandelbaum Cert. ¶ 11.) Specifically, $172,055.35 of Products were sold to non-New Jersey residents, and $5,504.45 of Products were sold to New Jersey residents. (Mandelbaum Cert. ¶ 12.)

Even if one tests the amount in controversy by including potential attorneys' fees and treble damages for the New Jersey Sub-Class, to which Plaintiffs may be entitled *if* the First Count for violation of the New Jersey Consumer Fraud Act were a proper cause of action,[5] Plaintiffs still fall far short of the minimum $5,000,000 amount in controversy required to maintain jurisdiction in this Court. See Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007) (explaining the process for calculating the amount in controversy in a federal class action lawsuit). In Frederico, the Third Circuit considered whether the minimum jurisdictional amount was met in a diversity case removed from state to federal court. Id. at 197. The Court determined that, in addition to compensatory damages, if a plaintiff can collect attorneys' fees, such counsel fees could be "as much as thirty percent of the judgment." Id. at 199 (citing In re

---

[5] Pursuant to the Terms and Condition, California law governs the parties' dispute, so the New Jersey Consumer Fraud Act does not apply. See Section II(A), infra.

Rite Aid Corp. Securities Litigation, 396 F.3d 294, 303 (3d Cir. 2005)).[6]  If Plaintiffs prevailed on their alleged violation of the New Jersey Consumer Fraud Act, the alleged compensatory damages suffered by the New Jersey Sub-Class could be trebled to determine the total amount in controversy.  See N.J.S.A. 56:8-19.  However, even combining the $177,559.80 in compensatory damages with the potential treble damages and attorneys' fees that the New Jersey Sub-Class *may* be able to collect if a violation of the New Jersey Consumer Fraud Act is found, the maximum potential amount in controversy is only $206,182.94.[7]  Plaintiffs cannot possibly meet the minimum requirement of $5,000,000.

Because Plaintiffs cannot satisfy the amount in controversy prerequisite, this Court lacks jurisdiction to adjudicate this matter and should dismiss the case.  See 28 U.S.C. § 1332(d).

> II.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE FIRST COUNT OF THE CLASS ACTION COMPLAINT AND TRANSFER THE REMAINDER OF THIS ACTION TO THE SOUTHERN DISTRICT OF CALIFORNIA.

In the alternative, this Court should dismiss the First Count of the Class Action Complaint, alleging violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., and transfer the matter to the Southern District of California.  The Terms specify California law applies and that California courts are the only forum for this dispute.

---

[6] The Third Circuit relied on a study by the Federal Judicial Center that found a median percentage fee range equal to 27-30% of the total damages for all class actions resolved or settled over a four-year period.

[7] As set forth in the Mandelbaum Cert., the total amount of Products sold to New Jersey residents is $5,504.45 of the $177,559.80 total amount of Products sold in the United States. (Mandelbaum Cert. ¶ 12.)  Trebling $5,504.45 amounts to $16,513.35, and considering potential attorneys' fees of 30% increases this amount by $4,954.01.  Thus, the total potential damages and fees recoverable by the New Jersey Sub-Class are $28,623.14.

8

At the time Plaintiffs purchased the Products in October 2013, the Website expressly stated that Plaintiffs' "use of the [Website] is subject to these Terms," and that "BY USING THIS SITE, YOU AGREE TO AND WILL BE DEEMED TO BE BOUND BY THESE TERMS."  (Terms ¶ 1.)  The Terms also contain a section entitled "Law and Forum," which provides that the Terms are "governed by the laws of the State of California . . . [and Plaintiffs] acknowledge[] that any dispute arising out of these Terms **shall** be brought in the federal or state courts of California."  (Id. at ¶ 11.)  Therefore, California law applies to Plaintiffs' claims, and this lawsuit must proceed, if at all, in a California court.

### A. This Court Should Dismiss The New Jersey Consumer Fraud Act Count Of The Complaint Because New Jersey Law Does Not Apply To This Dispute.

New Jersey's choice of law rules apply to determine whether the law of California or the law of New Jersey applies to the parties' dispute.  Maniscalco v. Brother Intern. (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013).  New Jersey's choice of law rules provide:

> if the parties to a contract agree **that a particular state's law will govern their rights and duties under the contract, the courts will generally honor the agreement**, unless: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state, which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Restatement of Conflict § 187, would be the state of the applicable law in the absence of an effective choice of law by the parties."

[Christy v. We The People Forms and Service Centers, USA, Inc., 213 F.R.D. 235, 239 (D.N.J. 2003) (citing Restatement (Second) of Conflict of Laws § 187, Newcomb v. Daniels, Salts, Mongeluzzi & Barrett, Ltd., 847 F.Supp. 1244, 1248 (D.N.J. 1994)) (emphases added).]

This Court should apply New Jersey's choice of law analysis, which requires application of California law to this matter.  See Maniscalco, 709 F.3d at 206, supra.  Plaintiffs have agreed that California law applies to this dispute.  (Terms, ¶¶ 1, 11.)  The Terms expressly provide that

9

any dispute between these Parties related to the Products will be decided pursuant to California law. (See Terms, supra.) Furthermore, because TCI is a California entity with its principal place of business located in California, it is a reasonable forum to which plaintiffs previously agreed. (See Mandelbaum Cert. ¶ 1.) Moreover, New Jersey has no fundamental policy that is contrary to the application of California law here. Both states, for example, have consumer fraud statutes that protect consumers. (See California Unfair Trade Practices Act, Cal. Bus & Prof. Code § 17070, et seq.; California Consumer Legal Remedies Act, Cal. Civ. Code § 1780, et seq.; N.J.S.A. 56:8-1, et seq. ).

Plaintiffs agreed to the application of California law and are bound by that agreement. Their New Jersey Consumer Fraud Act Count should therefore be dismissed.

### B. This Court Should Transfer This Action To The Southern District Of California Because Plaintiffs Agreed To A California Forum When They Purchased The Products.

Even if the Court determines subject matter jurisdiction exists, it should nonetheless transfer this action to the Southern District of California – where TCI is located – pursuant to the forum selection clause. The Terms expressly provide that "any dispute arising out of these Terms shall be brought in the federal or state courts of California." (Terms, ¶ 11.) This Court has the power to transfer this action to another venue in the interest of justice to enforce this provision. See 28 U.S.C. § 1404(a).

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C.A. § 1404(a). A Section 1404(a) transfer is the proper disposition when a forum selection clause specifies a forum other than the one in which plaintiff filed suit. See

10

Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 134 S.Ct. 568, 580-81 (2013).

> When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. **Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied**.

[Id. at 581 (emphasis added).]

In Atlantic Marine Const. Co., the Supreme Court explained that a forum selection clause contained in a contract "represents the parties' agreement as to the most proper forum." Id. To protect the parties' legitimate expectations and further the interests of the justice system, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." Id. (internal quotations omitted); see also Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1219 (3d Cir. 1991) (citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1907)) (finding that forum selection clauses "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.")

For a forum selection clause to be deemed "unreasonable," the challenging party must make a "strong showing" that (i) the stated forum is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court," or (ii) that the clause was incorporated through "fraud or overreaching," or (iii) that enforcement would violate a strong public policy of the existing forum. Id.; Mark IV Transp. & Logistics, Inc. v. Nat'l Independent Contractor Ass'n, Inc., 2014 WL 69890 (D.N.J. Jan. 9, 2014). Moreover, "[t]hat there may not have been actual negotiations over the clause does not affect its validity." Foster, 933 F.2d at 1219 (citing Carnival Cruise Lines, Inc. v. Shute, 299 U.S. 585 (1991) (holding that a non-negotiated forum selection clause specified on a passenger ticket received after purchase was reasonable and enforceable)).

11

In Carnival Cruise Lines, Inc., the Supreme Court enforced a forum selection clause in respondents' tickets for a cruise line, which was not negotiated between the parties and merely specified on each ticket. 299 U.S. at 587. The Court rejected the Court of Appeals' "determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining." Id. at 593. The Supreme Court held that the respondent-passengers did not satisfy the "heavy burden of proof" required to set aside the clause on grounds of inconvenience. Id. at 594. The Court reasoned that the clause was enforceable because (i) the cruise line had a special interest in limiting the fora in which it could be subject to suit; (ii) the forum selection clause dispels any confusion about where suits arising from the contract must be litigated, which "spar[es] litigants the time and expense of pretrial motions to determine the correct forum and conserv[es] judicial resources that otherwise would be devoted to deciding those motions;" and (iii) passengers who purchase tickets with this forum selection clause likely benefit from a reduced fare reflecting the savings to the cruise line by limiting the for a in which it may be sued. Id. at 594.

Here, by using the Website to purchase the Products, Plaintiffs agreed to a California forum. (Terms, ¶ 11.) Plaintiffs' choice of a different forum carries no weight. Atlantic Marine Const. Co., 134 S.Ct. at 581. Rather, as the party defying the forum-selection clause, plaintiffs bear the burden of establishing that the transfer to the forum to which the parties agreed is unwarranted. Id.; see Jumara, 55 F.3d at 880 ("[W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue.") Plaintiffs must demonstrate that exceptional circumstances exist to justify proceeding in a forum other than the one specifically agreed to by

12

the parties in their transactions.  See Foster, 933 F.2d at 1219; Mark IV Transp. & Logistics, Inc., 2014 WL 69890 (D.N.J. Jan. 9, 2014), supra.  Plaintiffs cannot meet this heavy burden.

Moreover, like the seller at issue in Carnival Cruise Lines, Inc., LNT has a special interest in limiting its exposure to lawsuits throughout the country.  As Plaintiffs allege, LNT "markets and sells the [Products] . . . nationwide."  (Compl. ¶ 32.)  The clause clearly indicates to litigants where suits arising from the Website must be litigated and "spares litigants" from pre-answer motion practice like the instant motion.  (See id.)  The entity running the Website business for LNT – TCI – is in San Diego, California.  (Mandelbaum Cert. ¶ 1.)  Therefore, this clause is enforceable, and the Court should transfer this action to the Southern District of California.

## **CONCLUSION**

For all the foregoing reasons, LNT respectfully submits that the Court should dismiss the Class Action Complaint for lack of subject matter jurisdiction.  In the alternative, the Court should dismiss Plaintiffs' New Jersey Consumer Fraud Act claim because it is barred by their assent to apply California law, and the Court should transfer the remainder of the action to the Southern District of California.

        COLE, SCHOTZ, MEISEL,
        FORMAN & LEONARD, P.A.
        Attorneys for Defendant LNT
        Acquisition, LLC d/b/a Linens 'n Things


By: */s/ David M. Kohane*
      David M. Kohane

DATED:  May 16, 2014

14